**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**
_____

FISHER & COMPANY, INC.,

    Plaintiff,

v.                                                                       Case No. 19-10665

FINE BLANKING & TOOL CO., L.T.D.,

    Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
"MOTION FOR ANTI-SUIT INJUNCTION"**

Plaintiff Fisher & Company, Inc. ("Fisher") moves for the court to issue an injunction against Defendant Fine Blanking & Tool Co., L.T.D. ("FBT"). (ECF No. 17.) Fisher seeks to prevent FBT from litigating claims against Fisher in Taiwan. FBT has responded and Fisher has replied. (ECF Nos. 23, 24.) For the reasons provided below, the motion will be denied.

## I.  BACKGROUND

Fisher filed this suit on March 6, 2019. (ECF No. 1.) It alleged that it contracted with FBT, an auto parts supplier, to produce and deliver specified latches for Fisher. (*Id.*, PageID.2, ¶¶ 10-11.) Fisher incorporated these latches into seating structures for automobiles, ultimately sold by companies such as Fiat Chrysler. (*Id.*, PageID.2, ¶¶ 7, 10.) Fisher claimed that FBT breached contractual obligations, memorialized in a purchase order. (*Id.*, PageID.5-6, ¶¶ 35-38.) The purchase order is labeled SCS000097. (*Id.*)

Fisher claims that FBT delivered defective parts. (*Id.*, PageID.4, ¶¶ 21-22.) In order to meet requirements with its customers, Fisher alleged that it needed to terminate the contract with FBT and produce the latches internally. (*Id.*, PageID.4-5, ¶ 28.) In its complaint, Fisher brought one count for breach of contract against FBT and another count for declaratory judgment, asking the court to determine the amount Fisher owes to FBT for Fisher's early termination. (*Id.*, PageID.5-6, ¶¶ 34-44.)

On May 18, 2019, FBT notified Fisher that it had filed two complaints against Fisher in Taiwanese courts four days earlier, on May 14, 2019. (ECF No. 17, PageID.220-21.) One suit was brought before Taiwan's Intellectual Property Court while another was brought before a Taiwanese district court. (*Id.*, PageID.234, 241.) The intellectual property suit alleged that Fisher and a Taiwanese subsidiary owned by Fisher, Fisher Dynamics (Shanghai), conspired to fraudulently steal trade secrets, utilized copyrighted material unlawfully, and engaged in unfair competition against FBT, amongst other claims. (*Id.*, PageID.231-34.) The district court suit included allegations that Fisher and its subsidiary had unlawfully damaged FBT's business reputation, had obtained an undue benefit, and had committed "contracting negligence" in undermining FBT's expectations of a continuing commercial relationship. (*Id.*, PageID.238-41.)

## II. DISCUSSION

Fisher asks the court to issue an injunction against FBT and cut short ongoing litigation in Taiwan. Fisher relies on a forum selection clause purportedly included in purchase order SCS000097. (ECF No. 17, PageID.213.) The court does not find the exceptional remedy of an anti-suit injunction appropriate or necessary.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). In fact, it "has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).

The presumption against injunctions is especially applicable when an injunction would affect a foreign government. The Sixth Circuit has recently held that an anti-suit injunction is permissible to uphold a forum selection clause. *Beijing Fito Med. Co. v. Wright Med. Tech., Inc.*, 763 Fed. App'x 388, 400 (6th Cir. 2019). However, the Sixth Circuit has also clarified that an order forbidding a party from litigating in a foreign court "should be issued sparingly and only in the rarest of cases." *Gua Shan Co. v. Bankers Trust Co.*, 956 F.2d 1349, 1354 (6th Cir. 1992); *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 471 (6th Cir. 2009). This is because such a decision involves a court in one judicial district of the United States dictating to a foreign sovereign government that it cannot hear a lawsuit under its own laws. The Sixth Circuit has described how "[s]uch action conveys the message, intended or not, that the issuing court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility." *Id.* at 1355. "Foreign governments can be expected to reciprocate such disrespect," damaging international comity for our nation as a whole. *Id.* An anti-suit injunction "threatens predictability [throughout international commerce] by making cooperation and reciprocity between courts of different nations less likely." *Id.* More specifically, it risks a reciprocal

anti-suit injunction by the Taiwanese courts against this court, resulting in "both actions . . . paralyzed and neither party . . . able to obtain any relief." *Id.* at 1354-55.

Hesitation to issue such injunctions fits within the greater theme in American jurisprudence that disfavors unnecessary judicial interference with foreign affairs, an area generally reserved to other branches of the federal government. Although discussed in different legal contexts, it is "long acknowledged that courts are particularly ill suited to intervening in exigent disputes . . . [that] creat[e] acute 'risk of embarrassment of our government abroad.'" *Zivotofsky v. Clinton*, 566 U.S. 189, 205-06 (2012) (quoting *Baker v. Carr*, 369 U.S. 186, 226 (1962)). "Foreign policy and national security decisions are 'delicate, complex, and involve large elements of prophecy' for which 'the Judiciary has neither aptitude, facilities, nor responsibility.'" *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1414 (2018) (Gorsuch, J., concurring) (quoting *Chicago & S. Air Lines, Inc. v. Waterman SS Corp.*, 333 U.S. 103, 111 (1948)).

Even though this court *may* issue an injunction impacting foreign governments, it does not mean that the court *should* risk the potential consequences. *Beijing*, 763 Fed. App'x 388, the case Fisher relies on to argue for an injunction, was ground breaking in that *Beijing* allowed a federal court to enforce a forum selection clause by means of a foreign anti-suit injunction in the first place. The holding in *Beijing* does not dispel the long-standing principles disfavoring such actions. *See Beijing*, 763 Fed. App'x at 399 (quotations removed) ("Courts rarely issue the injunction because that relief contravenes the general principle of allowing parallel proceedings on the same *in personam* claim.").

The parties put forward substantial dispute over whether a forum selection clause applies to purchase order SCS000097. (ECF No. 23, PageID.302-03; ECF No. 24, PageID.490-91.) Putting that question aside, the court is more uncertain as to whether, if the clause did apply, it covers claims put forward in Taiwan. The clause only applies to "any action hereunder." (ECF No. 17, PageID.253.) Fisher argues that the Taiwanese intellectual property suit is covered by SCS000097 because "[SCS000097] addresses intellectual property." (ECF No. 24, PageID.491.) Fisher claims that the Taiwanese district court suit is covered because "when a contract covers the duties that are subject of an asserted claim, no tort claim can lie." (*Id.*)

It is nonetheless striking that both of FBT's Taiwan suits make no reference to SCS000097 or any of its terms. (ECF No. 17, PageID.222-42.) No other purchase order is mentioned. (*Id.*) None of the grounds listed in the intellectual property claim contain any reference to a contract or contracting. (*Id.*, PageID.222-35.) The Taiwanese district court suit only mentions a contract (unspecified) when discussing its claim for "contracting negligence." (*Id.*, PageID.240-41.) However, that claim concerns future, not existing, contractual relationships. (*Id.*)

Fisher asks the court to inquire into complex and nuanced Taiwanese claims and find that they fall within the forum selection clause. This requires the court to dive headlong into a legal expedition for claims that this court, along with virtually every other court in the United States, has never seen before. The court thus finds it very difficult to definitively determine which Taiwanese claims are coved by the forum selection clause. Further, courts in the Sixth Circuit have interpreted whether claims fall within "broad" forum selection clauses that cover "any claim or controversy arising out of or relating to

5

the agreement." *Traton News, LLC v. Traton Corp.*, 528 Fed. App'x 525, 528-29 (6th Cir. 2013) (reasoning that a claim needs to have "a significant relationship to [the contract]" and "maintained without reference to the [the contract]" when the forum selection clause covers "any claim or controversy arising out of or relating to the agreement"); *Lorenzana v. 2nd Story Software, Inc.*, 2012 WL 2838645, at *6 (W.D. Ky. July 10, 2012) (quoting *Hasler Aviation, L.L.C. v. Aircenter, Inc.*, 2007 WL 2463283, at *5 (E.D. Tenn. Aug. 27, 2007)) ("The Sixth Circuit . . . 'interpret[s] forum selection clauses with 'related to' language as covering tort or consumer protection claims 'related to' the contract's purpose.'"). However, the parties have presented no cases that involve the narrower "hereunder" clause at issue here. The court discovered no controlling precedent on the issue independently.

The "hereunder" language appears closer to the forum selection clause discussed in *Interamerican Trade Corp. v. Companhia Fabricadora De Pecas*, 973 F.2d 487 (6th Cir. 1992). There, the Sixth Circuit interpreted a clause covering "the interpretation and compliance with this Agreement" to mean "claims aris[ing] out of . . . alleged breaches" of the contract. *Id.* at 488, 490; *see also Interamerican Trade Corp. v. Companhia Fabricadora De Pecas*, 1991 WL 427640, at *4 (S.D. Ohio July 31, 1991) (the district court opinion upheld by the Sixth Circuit, describing the outside claims as "stripped of their ornamentation, add[ing] up to nothing more than [other] action[s] for breach of contract"). If that reasoning were to apply here, it is very plausible that FBT's Taiwanese claims, which contain no reference to SCS000097 and do not identify any of Fisher's actions as breaches, fall outside the forum selection clause's coverage.

6

While the court does not decide affirmatively whether the forum selection clause applies to SCS000097 or extends to cover the Taiwanese lawsuits, the court does admit that these issues are highly debatable and uncertain.

The decision to issue an injunction is discretionary. *Hornback v. Brotherhood of R.R. Signalmen*, 346 F.2d 161, 164 (6th Cir. 1965) (granting or denying an injunction falls "within the sound judicial discretion of the trial court"). Given the extraordinary nature of an injunction and "that [it] will not be awarded in doubtful cases," the court will exercise its discretion in declining to issue one here. *Monsanto*, 561 U.S. at 165; *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18*, 471 F.2d 872, 876 (6th Cir. 1972). The court will not risk impacting the nation's relations with another sovereign government, an area in which a court is particularly ill-suited to involve itself. *Gua Shan*, 956 F.2d at 1354-55; *Zivotofsky*, 566 U.S. at 205-06; *Jesner*, 138 S. Ct. at 1414. The court lacks knowledge or expertise in Taiwanese law and will not make a questionable decision over whether FBT's foreign claims fall within the relatively narrow "hereunder" forum selection clause. If Fisher wishes to continue to argue over the applicability of a forum selection clause to the Taiwanese suits, it can do so in Taiwan. The court trusts Fisher will be given a fair hearing.

### III. CONCLUSION

Fisher asks the court to issue a foreign anti-suit injunction, interfering with litigation in a foreign court arising under foreign law. Given the presumption against issuing such injunctions, the court's lack of expertise, and the substantial uncertainty regarding whether a forum selection clause applies to the foreign claims, Fisher's motion will be denied. Accordingly,

7

IT IS ORDERED that Plaintiff's "Motion for Anti-Suit Injunction" (ECF No. 17) is DENIED.

                                                     s/Robert H. Cleland                /
                                                     ROBERT H. CLELAND
                                                     UNITED STATES DISTRICT JUDGE

Dated: November 8, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 8, 2019, by electronic and/or ordinary mail.

                                                     s/Lisa Wagner                   /
                                                   Case Manager and Deputy Clerk
                                                   (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-10665.FISHER.Anti-SuitInjunction.RMK.docx